**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF VIRGINIA**
**LYNCHBURG DIVISION**

| | |
|---|---|
| In re: WESLEY L. BASORE and DEBORAH D. BASORE, | ) |
| | ) |
| | ) |
| Debtors. | ) |
| | ) |
| ──────────────────────── | ) |
| WESLEY L. BASORE and DEBORAH D. BASORE, | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| TAXING AUTHORITY CONSULTING SERVICES, INC., | ) |
| | ) |
| and | ) |
| | ) |
| COUNTY OF LOUISA, VIRGINIA, | ) |
| | ) |
| | ) |
| Defendants, | ) |
| ──────────────────────── | ) |

Case No. 10-60595

Adv. No. 10-06127

**MEMORANDUM**

This matter comes before the Court on a complaint by Wesley L. Basore and Deborah D.

Basore ("the Plaintiffs"), which complaint seeks sanctions for an alleged violation of the automatic

stay by Taxing Authority Consulting Services, Inc. ("TACS") and the County of Louisa, Virginia

("the County of Louisa"). A consent order was entered dismissing the complaint as against the

1

County of Louisa.  TACS opposes the complaint.  Judgment shall be entered in favor of the TACS.

### *Jurisdiction*

This Court has jurisdiction over this matter.  28 U.S.C. § 1334(a) & 157(a).  This proceeding is a core proceeding.  28 U.S.C. § 157(b)(2)(A).  <u>Also</u> <u>see</u> <u>Budget Service Co. v. Better Homes of Virginia, Inc.</u>, 804 F.2d 280 (4th Cir. 1986).  This Court may enter a final order. This memorandum shall constitute the Court's findings of fact and conclusions of law as required by Fed. R. Civ. P. 52, which is made applicable in this proceeding by Fed. R. Bankr. P. 7052.

### *Facts*

The Plaintiffs are the debtors in the above styled bankruptcy case.  The County of Louisa is a county in the Commonwealth of Virginia.  TACS is a law firm that handles collection matters for governmental taxing authorities including the County of Louisa.  TACS sends collection letters to delinquent taxpayers using an automated system.

On April 2, 2010, the Plaintiffs filed a petition initiating the above-styled bankruptcy case.

On May 21, 2010, the County of Louisa delivered a demand for payment of the Taxes to the Plaintiffs.  On May 28, 2010, counsel for the Plaintiffs sent a letter to the Louisa County Treasurer demanding that the county cease collections efforts.

On July 6, 2010, TACS filed a proof of claim in the amount of $882.35 on behalf of the Louisa County Treasurer.  On or about September 2, 2010, the Defendant TACS  sent an "Urgent Collections Communication" ("the Collection Letter") to the Plaintiffs attempting to collect the Taxes.  Mrs. Basore called TACS and informed it that she had filed a petition in bankruptcy.  After the one telephone call, TACS made no further attempt to communicate with the Plaintiffs.

On October 12, 2010, the Plaintiffs filed the above complaint against the County of Louisa

and TACS.  On October 25, 2010, an order issued dismissing the complaint as against the County

of Louisa upon motion of the Plaintiffs.  On November 3, 2010, TACS sent a letter to counsel for

the Plaintiffs demanding that the Plaintiffs withdraw the complaint.

### *Discussion*

Section 362(a) provides that the filing of a petition automatically creates a stay against

commencing or continuing certain acts including acts to obtain possession of property of the

estate.  The Plaintiffs seek actual damages and attorneys fees for violation of the automatic stay.


TACS seeks damages under Fed.R.Civ.P. 11 as made applicable in this proceeding by

Fed.R.Bankr.P.  9011.

### I.

It appears that the complaint is brought under Section 362(k)(1) although that paragraph

is not mentioned in the complaint.  Section 362(k)(1) provides that "an individual injured by any

willful violation of a stay provided by this section shall recover actual damages, including costs

and attorneys' fees, and, in appropriate circumstances, may recover punitive damages".   To

recover damages, the debtor must also show that, (1) the violation was committed willfully, and

(2) that an injury resulted.  See In re Harris, 374 B.R. 611 (Bankr. N.D.Ohio 2007).   In this

instance, TACS violated the stay by sending the Collection Letter to the Debtors.

The issue is whether the violation was willful.  A willful violation of the automatic stay is

a deliberate and intentional act, see In re Tel–A–Communications Consultants, Inc., 50 B.R. 250,

254 (Bankr. D.Conn.1985), done with knowledge of the automatic stay, see In re Davis, 74 B.R.

406 (Bankr. N.D. Ohio 1987) or of the bankruptcy filing.  See In re Haan, 93 B.R. 439 (Bankr.

W.D. N.C. 1988).  The willfulness requirement refers to the deliberateness of the conduct and

the knowledge of the bankruptcy filing, not to a specific intent to violate a court order.  See In re

Kilby, 100 br 579 (Bankr. M.D. Fla. 1989)   It is not required that the entity had a specific intent

to violate the automatic stay; rather, a willful violation occurs when the entity knew of the

automatic stay and the entity's actions which violated the stay were intentional.  See In re Bloom,

875 F.2d 224 (9th Cir. 1989).  Knowledge of the bankruptcy filing has been held to be the legal

equivalent of knowledge of the automatic stay.  See In re NWFX, Inc., 81 B.R. 500 (Bankr.

W.D.Ark. 19897). Thus, there is authority that when there is actual notice of the bankruptcy

filing, there is a presumption that the violation was deliberate or intentional.  See In re Marine

Pollution Service, Inc., 99 B.R. 210 (Bankr. S.D. N.Y. 1989).

The Tel-A-Communications, a Connecticut bankruptcy court relied on the legislative

history of Section 523(a)(6) in fashioning a working definition for the word "willful".

> In determining whether the defendant's conduct was willful, reference is made to
> similar language in the Code which has been the subject of judicial construction. In the
> context of Code § 523(a)(6), which relates to the nondischargeability of debts caused by
> the willful and malicious injury by the debtor to the person or property of another entity,
> courts have construed willful to mean intentional or deliberate. Matter of Langer, 12 B.R.
> 957, 959, 7 B.C.D. 1323, 1324 (D.N.D.1981); In re Stanfield, 14 B.R. 180, 8 B.C.D. 170
> (Bankr.N.D.Oh.1981); In re Glazer, 25 B.R. 329, 330, 10 B.C.D. 178, 179 (BAP 9th
> Cir.1982). See also Legislative History of Code § 523(a)(6) which states that willful
> means deliberate or intentional. H.R.Rep. No. 96–595, 95th Cong., 1st Sess. 365 (1977);
> S.Rep. No. 989, 95th Cong., 2d Sess. 77–79 (1978).

Tel–A–Communications, 50 B.R. at 254.

In 1986, the Fourth Circuit Court of Appeals, after agreeing generally with the reasoning

in Tel-A-Communications, affirmed sanctions for violation of the automatic stay holding that

there was "ample evidence in the record to support the conclusion that [the creditor] *knew* of the

petition and *intentionally* attempted to repossess the vehicles *in spite of it*."  Budget, 804 F.2d at

4

292. (Emphasis added.)

While there was no further discussion of the "willful" issue in <u>Budget</u>, a North Carolina

Bankruptcy Court construed <u>Budget</u> to require an intentional and deliberate act.

> Section 362[(k)] imposes sanctions only for a  "willful" violation of the stay.
> "'Willful' is a word 'of many meanings, its construction often influenced by its context.'"
> <u>Screws v. United States</u>, 325 U.S. 91, 101, 65 S.Ct. 1031, 1035, 89 L.Ed. 1495 (1944)
> There is no legislative history on what Congress intended "willful" to mean in the context
> of § 362(h).  The courts have generally interpreted it to require "intentional or deliberate"
> conduct. <u>See</u>,  <u>In re Tel–A–Communications Consultants, Inc.</u>, 50 B.R. 250, 254
> (Bkr.D.Conn.1985), cited with approval in <u>Budget Service Co. v. Better Homes of</u>
> <u>Virginia, Inc.</u>, 804 F.2d 289, 292 (4th Cir.1986).

<u>In re Shealy</u>, 90 B.R. 176, 179 (Bankr. W.D.N.C. 1988).

In <u>Shealy</u>, the South Carolina Tax Commission committed a clerical error by failing to

indicate on the debtor's tax claim file that the debtor had filed a bankruptcy petition.  The

Commission sent five demand letters to the debtor.  Three of the five letters were sent after the

creditor had filed a proof of claim and the debtor's attorney had warned the Commission that

additional demand letters could result in sanctions.  The Commission defended its actions by

arguing that the last three demand letters were the result of a clerical error, the same error that

had caused the first two demand letters to be sent.  The court held that the inaction of the

Commission to prevent sending of the last three letters amounted to a "reckless disregard" of the

stay.  <u>Id.</u> At 179.  Nonetheless, the court went on to state, "[t]his is not to say that any innocent

clerical error will amount to a willful act." <u>Id.</u>  The court found that the Commission had

committed more than an innocent clerical error because the creditor had received *multiple*

notices, yet took no action until it was threatened with sanctions for violating the stay.  The court

concluded that the pattern of inattention to the stay demonstrates such a disregard for statutory

duty as to amount to a "willful" act.  <u>Id.</u> at 180.

A District Court within the Fourth Circuit, relying on <u>Budget</u>, adopted the same definition for willful.  <u>See</u> <u>In re Hamrick</u>, 175 B.R. 890 (W.D.N.C. 1994).  In <u>Hamrick</u>, the debtors scheduled the creditor and the creditor received notice of the filing of the petition. Thereafter, the debtors received one or more demands for payment from the creditor.  Debtors' counsel sent a written warning that sanctions would be sought unless the demands were withdrawn.  The creditor withdrew the demands and gave debtors a written apology.  No motion for sanctions was brought as a result of this incident. Thereafter, the court confirmed the debtors' Chapter 13 plan.  The trustee mailed the payments to an address other than that provided in the proof of claim.   The checks were received by the creditor, but were processed through a different system.  An employee of the creditor who was not familiar with the creditor's procedure for bankruptcy did not disable the automatic letter feature.  Consequently, approximately one year after the first incident, the creditor sent another letter containing a demand for payment which caused the computer to generate a dunning letter to the debtors. Counsel for the debtors sought sanctions for violation of the automatic stay.  The Bankruptcy Court awarded damages.   The creditor appealed.

The District Court relied in part on <u>Budget Service Co. v. Better Homes of Virginia, Inc.</u>, 804 F.2d 280 (4th Cir. 1986) and wrote:

> The Fourth Circuit has stated that the conduct of a creditor in violating the stay is willful when "[t]here is ample evidence in the record to support the conclusion that [the creditor] knew of the pending petition and intentionally attempted to [continue collection procedures] in spite of it." <u>Budget</u>, 804 F.2d at 292–93. Thus, in order for conduct to be willful, it must be intentional or deliberate.
> . . .
> The circumstances presented here amount to nothing more than "innocent clerical error." The Appellant had in place a mechanism to prevent the generation of demand notices which would have prevented the notice but for the innocent mistake of a new employee. Nor does the Court find that the mere failure to correctly train this employee

amounts to "reckless disregard" of the stay. This incident was an isolated event . . .

In reaching this conclusion, the Court relies on the commonly accepted definitions of the terms "deliberate" and "intentional." Black's Law Dictionary defines "deliberate" as "formed, arrived at, or determined upon as a result of careful thought and weighing of considerations." Black's Law Dictionary (5th ed. 1979). "Intention" is defined as "determination to act in a certain way or to do a certain thing ... a person who contemplates any result, as not unlikely to follow from a deliberate act of his own, may be said to intend that result...." Id. Under neither of the above definitions could the conduct at issue here be considered "deliberate" or "intentional;" it was quite simply a mistake.

Hamrick, 175 B.R. at 892-3.

In the Fourth Circuit a willful violation of the automatic stay is a deliberate and intentional act committed with knowledge of the bankruptcy filing.  If there is actual notice of the bankruptcy filing, there is a presumption that the violation was deliberate or intentional. It is further concluded that, in the absence of actual notice, a reckless disregard of process may also be deemed to be willful.  A single unintentional act is not a willful violation within the meaning of the statute, especially where the creditor has reasonably relied on a system with no previous problems, where the creditor takes steps to avoid repeated violations and where no further violations occur.

TACS did not sent the Collection Letter willfully.  TACS sent out *one* demand letter as the result of a clerical error committed by the County of Louisa.[1]  Twice a year the County of Louisa sends TACS a bundle of delinquent tax accounts by computer for collection.  The County of Louisa indicates on the accounts those taxpayers that have filed a bankruptcy petition.  In this case, for whatever reason, the Plaintiffs' tax file was not flagged by the County of Louisa.  The failure to flag the account was not TACS's doing.  Further, as soon as the Plaintiffs informed

---

[1]       Mrs. Basore's testified that the Plaintiffs received communications from the County of Louisa post-petition concerning her 2009 property taxes.  But this had nothing to do with the actions of TACS.

7

TACS that they had filed a bankruptcy petition, TACS investigated the situation, determined that the Plaintiffs had filed a petition, and ceased all collection efforts.

The one act of TACS is far less offensive  that those in <u>Hamrick</u>, in which the creditor continued to send dunning statements after receiving a letter from the debtor's counsel.  And in <u>Hamrick</u>, the United States District Court still found that the violation was not willful.  The District Court noted that the creditor had in place a mechanism to prevent the generation of demand notices which would have prevented the notice but for the innocent mistake of a new employee.  The District Court found that the mere failure to correctly train the employee did not amount to "reckless disregard" of the stay.

Nor does the one act of TACS rise to the level of conduct by the creditor in <u>Shealy</u>.   In that case, the creditor sent three collection letters after the creditor had filed a proof of claim and the debtor's attorney had warned the creditor that additional demand letters could result in Section 362 sanctions.

TACS had no actual knowledge that the Plaintiffs had filed bankruptcy.  TACS ceased collection efforts immediately after receiving one telephone call from the Plaintiffs and *before* any communication from the Plaintiffs' attorney.  In fact, it appears that TACS ceased collection efforts before the Plaintiffs' counsel even knew of the Collection Letter. TACS did not willfully violate the automatic stay.

Further, the Plaintiffs incurred no damages as a result of the Collection Letter.  Mrs. Basore testified at the hearing on this matter that it took two months to straighten out the Plaintiffs's account with the County of Louisa, but TACS is a separate entity from the County of Louisa.  Any stress that Mrs. Basore felt was not the result of the Collection Letter.  The only

8

other damages that she incurred were attorney's fees.  A debtor and counsel for the debtor have

an affirmative duty to mitigate damages, including attorney's fees.   Once it is evident that the

creditor has ceased collection efforts, it is incumbent upon the debtor and counsel to limit any

further costs to the creditor.

> A debtor is also under a duty to mitigate their damages. For attorney fees, this
> means that after reasonable offers of settlement are made, any attorney fees incurred
> thereafter must be borne by the debtor.  In re Esposito, 154 B.R. 1011, 1015–16 (Bankr.
> N.D.Ga.1993).

Harris, 374 B.R. at 616.  Plaintiffs' counsel's fees were totally unnecessary because  they were

incurred after TACS ceased collection efforts.  Also see In Brock Utilit6ies & Grading, Inc., 185

B.R. 719 (Bankr. E.D.N.C. 1995) (Additional attorney's fees and costs were unnecessarily

incurred by debtor's counsel after counsel receives assurances from creditor that collection

efforts had ceased.)

TACS did not willfully violate the automatic stay.  The Plaintiffs incurred no damages

other than attorney's fees, which were incurred well after TACS ceased violation of the stay.

## II.

TACS seeks damages under Fed.R.Civ.P. 11 as made applicable in this proceeding by

Fed.R.Bankr.P.  9011.  Sanctions are appropriate when claims, defenses, and other legal

contentions are not warranted by existing law.  In this case the dispute was resolved before

counsel for the Plaintiffs became aware of it.  At the most, he needed only to contact TACS to

confirm that it would take no further collection efforts.   A telephone call lasting no more the two

minutes was the most that was required.

Instead, counsel filed a complaint.  At trial, counsel asserted "We filed a lawsuit. That's

what we had to do to get somebody's attention here to stop harassment of my client."  The

statement may have been true with respect to the County of Louisa, which is no longer a party to this proceeding, but it was clearly not true with respect to TACS, a fact that could have been ascertained by counsel for the Plaintiffs with one telephone call.  The sending of the Collection Letter did not amount to "harassment".   Even if one were to concluded that it was harassment, it had clearly ended more than a month before the Plaintiffs filed the instant complaint.

This court has previously admonished counsel's law firm from the bench to contact the creditor in such cases before filing a complaint.  It appears that the admonition was not sufficient.  Hopefully, this will not be an issue in the future.  The Court declines to award damages to TACS in this instance.

### *Conclusion*

Judgment on the complaint shall be entered in favor of the Defendant, Taxing Authority Consulting Services, Inc.  Judgment on the counter claim of Defendant Taxing Authority Consulting Services, Inc shall be entered in favor of the Plaintiffs.

Upon entry of this memorandum, the Clerk shall forward copies to Connor C. Crook, Esq., and Mark K. Ames, Esq.

Entered on this   12th   day of July, 2011.

William E. Anderson
United States Bankruptcy Judge

10